**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ELIZABETH K. BLACKMON,**

*Plaintiff,*

v.

**MERRICK GARLAND,**
U.S. Attorney General,

*Defendant.*[1]

---

**Civil Action No. 21-cv-0034 (FYP)**

---

<u>**MEMORANDUM OPINION**</u>

Plaintiff Elizabeth Blackmon is over 40 years old and worked at the Department of Justice's Bureau of Prisons ("BOP") as a Labor-Management Relations ("LMR") Specialist from October 1991 to October 2011.  *See* ECF No. 1 (Complaint), ¶¶ 9, 11.  On January 26, 2021, Blackmon initiated this action, alleging that between 2007 and 2011, her employer fostered a hostile work environment and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.*; and also discriminated against her based on her age, in violation of the Age Discrimination in Employment Act  ("ADEA"), 29 U.S.C. § 621 *et seq.  See generally id.*, ¶¶ 90–125.

BOP moves for summary judgment on some of Blackmon's claims, based on her failure to exhaust administrative remedies; and moves to dismiss the remaining allegations for failure to state a claim.  *See generally* ECF No. 9 (Def. Mot. to Dismiss and Partial Summ. J.) [hereinafter

---

[1]      Attorney General Merrick Garland is substituted for William Barr in his official capacity under Federal Rule of Civil Procedure 25(d).

Def. Mot.]; ECF No. 9-3 (Def. Mem. in Supp. of Def. Mot.) [hereinafter Def. Mem.].  For the following reasons, the Court will grant BOP's motion.

## BACKGROUND

### I.    Factual Background

 Blackmon alleges that she was mistreated in her workplace for years, providing a laundry list of discriminatory and retaliatory acts perpetrated by her supervisors based on her age and her protected activity.  Her allegations can be grouped into four categories:

### a.    Increased Workload and Unfair Treatment

Blackmon alleges that, in January 2008, she was "made responsible for the workload of three to five people."  *See* Compl., ¶ 22.  According to Blackmon, when she requested assistance or extra time to complete the work, she was "given a difficult time."  *See id.*, ¶ 59.  Additionally, she alleges that she was criticized for not completing work assignments when she was out of the office. *See id.*, ¶¶ 63–69.  For instance, in 2009, her supervisor allegedly blamed her for the late submission of an assignment that had come in while she was on leave.  *See id.*, ¶ 64.  She also alleges that she was held responsible and blamed for her inability to respond during leaves of absence on two other unspecified occasions.  *See id.*, ¶ 66.

Beyond workload, Blackmon alleges that between 2009 and 2011, BOP required her to work in a small area and denied her request for more desirable office space, despite her seniority. *See id.*, ¶¶ 55–56.  Blackmon further alleges that a younger, less experienced employee and an intern were given offices over her.  *See id.,* ¶ 57.  She also asserts that in October 2009, her supervisor sent an email stating that she had "ordered Blackberry cellphones for . . . 'all specialists in each office, EXCEPT for Liz [Blackmon].'"  *See id.*, ¶ 31 (alterations in original). When Blackmon eventually did get a BlackBerry, she complains that it took "approximately two

months to acquire one, although the process should have taken less than one week."  *See id.*, ¶ 32.

    b.  <u>Supervisory Management and Scrutiny</u>

Blackmon alleges that her supervisors subjected her to scrutiny and micromanagement. In March 2009, her then-supervisor began requiring Blackmon to submit daily reports, and, on March 16, 2009, placed her on an "informal" Performance Improvement Plan.  *See id.*, ¶¶ 25–26. Blackmon also contends that she was "questioned" about her use of telework.  *See id.*, ¶ 84.

    c.  <u>Professional Development Opportunities</u>

Blackmon alleges that her supervisors denied her opportunities to develop new skills and connections.  For example, she asserts that because of her workload, she lost the opportunity to teach "at the National Advocacy Center ('NAC') and the Regional Office as well as participating as a reviewer with the Program Review Office."  *See id.*, ¶ 48.  In the spring of 2011, a Human Resource Administrator from another office "requested that Plaintiff teach [a course] the week of April 4–8, 2011," but her supervisor denied her that opportunity "'[i]n light of [her] expressed concerns regarding [her] workload . . . .'"  *See id.*, ¶¶ 49–50.  Blackmon also contends that on March 25, 2011, her supervisor saw, but did not respond to, her request to attend a Leadership, Excellence, and Achievement Program ("LEAP") training.  *See id.*, ¶ 83.  Moreover, Blackmon complains that in May 2011, toward the end of her tenure at BOP, she was shut out of quarterly meetings that she had previously attended.  *See id.*, ¶¶ 85–86.

According to Blackmon, "[d]espite her seniority, [she] was consistently denied the opportunity to serve as acting supervisor during a supervisor's absence.  Rather, supervisors would select much less qualified employees to act."  *See id.*, ¶ 72.  Blackmon further asserts that her "supervisors stopped [her] from communicating with the Assistant Director's office and the

Justice Management Division," although she had previously served as a point of contact for those offices. *See id.*, ¶¶ 80–81.

    d.  <u>Performance Evaluations</u>

      Blackmon believes that her "performance evaluations . . . did not adequately reflect her workload and accomplishments." *See id.*, ¶ 27. "[I]n or around April 2009," Blackmon's supervisor assigned her "a 'fully satisfactory' rating, the middle ranking between 'unsatisfactory' and 'outstanding.'" *See id.*, ¶ 29. "In or around July 2010," Blackmon spoke with the Chief of her office "regarding her evaluation and was told that he had instructed his Deputy . . . to correct the evaluation," but the Deputy did not do so. *See id.*, ¶¶ 33, 35–38. She also alleges that "[a] second unfair rating came in or around November 2010 when [she] was again rated 'satisfactory.'" *See id.*, ¶ 34. Although her supervisor increased this rating to "exceeds" after Blackmon raised concerns, she believes "she was entitled to a rating of 'outstanding.'" *See id.*

      According to Blackmon, because of those "unfavorable evaluations and lack of awards in her record . . . [she] ha[s] been passed over for numerous positions as she could not make the Best Qualified ('BQ') list . . . despite her high qualifications and competitive application packet." *See id.*, ¶ 41. She complains specifically of six lateral positions for which she applied but was not selected. *See id.*, ¶¶ 42–47. After one non-selection, "[i]n or around November 2007," Blackmon contacted an Equal Employment Opportunity ("EEO") counselor and participated in mediation. *See id.*, ¶ 18. She alleges, however, that "then-Deputy Assistant Director of Human Resources Juan Castillo" made "threats . . . concerning her and her husband's jobs" if she pursued the EEO process. *See id.*, ¶ 19.

## II.     Procedural History

In November 2007 and July 2009, Blackmon raised, but did not pursue, allegations of discriminatory treatment with EEO counselors.  *See id.*, ¶¶ 18–19, 30.  Then, on December 13, 2010, Blackmon contacted an EEO counselor concerning discriminatory treatment, and later filed a formal complaint on March 29, 2011.  *See id.*, ¶ 78; ECF No. 9-2 (Def. Statement of Material Facts), ¶¶ 1–2 (citing ECF No. 9-4 (Decl. of Darrel C. Waugh (July 1, 2021) ("Waugh Decl.")), ¶¶ 2–3); ECF No. 11-65 (Pl. Statement of Material Facts), ¶ 2; *see also* Waugh Decl., Ex. B.  Blackmon's formal EEO complaint stated that she was discriminatorily not selected for the positions of Executive Assistant, Supervisory Labor Management Relations Specialist, Diversity Management Administrator, Management Analyst, Deputy Bureau Personnel Director, and Curriculum Development Manager.  *See* Def. SMF, ¶ 3 (citing Waugh Decl., ¶ 4).  The EEO investigation concluded in May 2012.  *See id.*, ¶ 6 (citing Waugh Decl., ¶ 11).[2]

Blackmon then requested a hearing before the Equal Employment Opportunity Commission ("EEOC").  *See id.*, ¶ 8 (citing Waugh Decl., ¶ 12).  On March 19, 2013, an Administrative Law Judge ("ALJ") issued an Acknowledgment and Order ("A&O") governing Blackmon's case.  *See id.*, ¶ 9 (citing Waugh Decl., ¶ 12).  The A&O notified Blackmon that she had 30 days to identify any claims the agency had dismissed during the investigative process, and to comment on the appropriateness of each dismissal.  *See id.*, ¶ 10 (citing Waugh Decl., ¶ 13).  Blackmon did not file anything opposing the dismissal of any claims.  *See id.*, ¶ 11 (citing Waugh Decl., ¶ 13).  The A&O further instructed that, if Blackmon wished to amend her EEO complaint, she should submit a motion as soon as possible, and warned that a motion to amend

---

[2]     On June 21, 2011, due to a conflict of interest, BOP's EEO office was recused from the case, and the Office of Equal Opportunity, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) took over the investigation of Blackmon's formal complaint.

filed late in the process might be denied.  *See id.*, ¶ 12 (citing Waugh Decl., ¶ 14).  Blackmon did

not file any timely motion to amend.  *See id.*, ¶ 13 (citing Waugh Decl., ¶ 14).

On June 30, 2017, the agency filed its Motion for Summary Judgment before the ALJ.

*See id.*, ¶ 14 (citing Waugh Decl., ¶ 15).  Plaintiff filed a Motion to Strike Summary Judgment or

in the Alternative Motion to Stay Deadlines.  *See id.*, ¶ 15 (citing Waugh Decl., ¶ 16).  The ALJ

construed Blackmon's filing as a Motion to Amend her claims and denied it as untimely.  *See id.*,

¶ 16 (citing Waugh Decl. 17).  After some additional back and forth, on September 16, 2020,

Blackmon informed the ALJ that "she ha[d] decided to withdraw her request for a hearing . . .

and intend[ed] to file her complaint in U.S. District Court."  *See* Waugh Decl., ¶ 21 & Ex. M.

Blackmon filed this suit on January 6, 2021.  Her Complaint contains four counts: (I)

retaliation for engaging in protected activity; (II) retaliatory hostile work environment; (III)

disparate treatment on the basis of age; and (IV) hostile work environment on the basis of age.

*See* Compl., at 19–24.  On July 6, 2021, BOP moved for summary judgment on certain claims

based on Blackmon's asserted failure to timely exhaust the EEO process, and to dismiss the

remaining allegations for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

*See generally* Def. Mot., Def. Mem.  Blackmon filed her opposition on August 6, 2021, *see* ECF

No. 11 (Pl. Mem. Opp'n), and BOP filed its reply on September 27, 2021, *see* ECF No. 14 (Def.

Reply in Supp. of Def. Mot. to Dismiss & Partial Summ. J.) [hereinafter Def. Reply].  This

dispositive motion is ripe for decision.

## LEGAL STANDARDS

### I.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon

which relief can be granted."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *see id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting "plaintiff the benefit of all inferences that can be derived from the facts alleged." *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## II.    Summary Judgment

Summary judgment is the proper procedural vehicle to resolve issues of administrative exhaustion when a defendant relies on evidence that is neither included nor referenced in the complaint to raise such issues. *See, e.g.*, *Rosier v. Holder*, 833 F. Supp. 2d 1, 5 (D.D.C. 2011). Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the

district court may "consider the fact undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e).

## ANALYSIS

### I.  **Exhaustion**

BOP moves for partial summary judgment on many of Blackmon's disparate-treatment and retaliation claims on the ground that she failed to timely exhaust her administrative remedies. *See* Def. Mem., at 8–11.  Before a federal employee may sue a federal agency for discrimination or retaliation under the ADEA, she must first administratively exhaust her claims within the applicable time frame. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  "[T]he defendant bears the burden of pleading and proving" the "untimely exhaustion of administrative remedies." *See id.*  Moreover, each claim of discrimination must be separately exhausted. *See Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)); *see also id.* ("Since *Morgan*, courts in the District of Columbia have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts . . . .").

#### A.  Untimely Claims

Under the relevant EEOC regulation, "[a]n aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105(a)(1).  Failure to consult an EEO counselor regarding a discrete discriminatory act within 45 days of that event will generally bar a subsequent ADEA or Title VII suit based on the allegedly discriminatory conduct. *See, e.g.*, *Drielak v. Pruitt*, 890 F.3d 297, 299 (D.C. Cir. 2018); *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017) ("The same administrative

exhaustion process governs both Title VII and ADEA retaliation claims." (citing 29 C.F.R. § 1614.103(a))).

Here, Blackmon contacted an EEO counselor on December 13, 2010. *See* Def. SMF, ¶ 1 (citing Waugh Decl., ¶ 2). Thus, all of Blackmon's claims based on conduct before October 29, 2010 – which is forty-five days prior to her EEO contact – should be time-barred under 29 C.F.R. § 1614.105(a)(1). Although Blackmon does not contest that timeline or the applicability of the governing regulation,[3] she nevertheless argues that the Court should overlook her failure to exhaust her pre-October 29, 2010, claims because barring those claims "would be unconscionable." *See* Pl. Mem. Opp'n, at 11.

In support of that argument, Blackmon relies on *Brown v. Marsh*, which declined to dismiss a Title VII claim for lack of exhaustion under extreme and narrowly defined circumstances. That "inordinately complex" case was part of a long-running struggle between a Black civilian employee and his employer, the U.S. Department of the Army, in which the parties had contested Brown's discrimination claims for "a full ten years." *See* 777 F.2d 8, 9, 15 (D.C. Cir. 1986). The court explained that "the Army's conduct in the more than ten years that Mr. Brown has been in formal and informal contact with it regarding the matters complained of in this suit" waived its exhaustion argument, because the Army "led Mr. Brown to believe that it was considering and investigating his complaints," did not "reject any complaints it considered untimely" during the administrative process, and went "far beyond mere investigation" to resolve the complaint. *See* 777 F.2d at 15–16; *see also Bowden*, 106 F.3d at 438 ("Although agencies do

---

[3]    Blackmon also contacted EEO counselors "in or around November 2007, [and] on or about August 10, 2009," but as she acknowledges, only the December 13, 2010, contact "led [to] the filing of her formal EEO complaint." *See* Pl. Mem. Opp'n, at 11. The 45-day clock begins the administrative process necessary to exhaust discrimination claims, but exhaustion also requires the filing of an official complaint. *See Coleman*, 867 F.3d at 206 (summarizing further administrative exhaustion requirements, including the filing of an official complaint). Because Blackmon did not pursue the administrative process beyond the initial contact with an EEO counselor until December 13, 2010, those earlier contacts do not affect the exhaustion analysis.

not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, we have suggested that if they not only accept and investigate, but also decide it on the merits — all without mentioning timeliness — their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit." (internal citations omitted)).

This case is significantly different from *Brown*. The agency here did not allow the EEO process to reach an administrative "deci[sion] on the merits" before raising timeliness. *See Bowden*, 106 F.3d at 438; *see also Brown*, 777 F.2d at 15 (noting that "[i]n its decision, the EEOC took it for granted that the Army had totally waived any timeliness objection"). Rather, the agency's 2017 motion for summary judgment flagged timeliness, and thus appropriately raised the issue during the administrative proceedings before the EEOC. Thus, BOP has not waived its defense of administrative exhaustion.

Accordingly, the following allegations of discrete discriminatory events are time-barred and may not be considered in support of Blackmon's disparate treatment or retaliation claims:

- Being assigned "the workload of three to five people beginning in or around January 2008," *see* Compl., ¶ 22;

- Being "discredit[ed] and blame[d]" in January 2009 for not timely completing an assignment that came in while she was on leave, *see id.*, ¶ 64;

- "Beginning in or around March 2009 . . . [being] tasked with submitting reports which detailed her work history for the day down to the minute," *see id.*, ¶ 25;

- Being placed on an informal Performance Improvement Plan in March 2009, *see id.*, ¶ 26;

- Not receiving an "outstanding" ranking "in or around April 2009," *see id.*, ¶ 29, and the failure of her supervisors to "correct" the evaluation from July 2010 through September 2010, *see id.*, ¶¶ 33, 35–36; and

- Not receiving an office Blackberry as quickly as her coworkers "[i]n or around October 2009," *see id.*, ¶¶ 31–32.

BOP therefore is entitled to summary judgment as to these discrete allegations.

B. <u>Unexhausted Lateral Transfer Claims</u>

Blackmon alleges discriminatory non-selection for six lateral[4] transfers for which she applied. *See* Compl., ¶¶ 41–47. As BOP notes, only one of those positions is mentioned in Blackmon's EEO complaint: a management analyst position in the DOJ External Auditing Branch.[5] *See* Def. Mem., at 12 (citing Waugh Decl., ¶ 5 & Ex. C). Blackmon's non-selection for that position occurred on March 19, 2010, more than nine months before she contacted an EEO counselor, and well outside the 45-day period mandated by the applicable regulation. *See* 29 C.F.R. § 1614.105(a)(1); *see also* Def. SMF, ¶ 4 (citing Waugh Dec., ¶ 5); Waugh Decl. Ex. C, at 3. Therefore, for substantially the same reasons described in Section I.A, *supra*, Defendant

---

[4]    As Blackmon notes, her Complaint is concerned only with lateral non-selections, as opposed to non-promotions, the difference being a given position's paygrade. *See* Compl., at 10 n.1. She explains that non-promotions are not at issue here because she is a party to a separate class action addressing those claims. *See id.*

[5]    Blackmon additionally argues that with respect to one alleged non-selection, for the position of Diversity Management Administrator in November 2007, she was dissuaded from exhausting her administrative remedies by threats from Juan Castillo, the then-Deputy Assistant Director of Human Affairs. *See* Pl. Mem. Opp'n, at 17–19. As BOP points out, however, Blackmon's declaration, *see* ECF No. 11–2, does not state that it is under penalty of perjury and does not indicate the date of execution. *See* Def. Reply, at 7–8. Therefore, it cannot constitute a declaration under 28 U.S.C. § 1746, and cannot serve to create a genuine issue of material fact. *See Yanofsky v. Dep't of Com.*, 2022 WL 2980344, *3 (D.D.C. Mar. 31, 2022) (striking declaration submitted in support of summary judgment motion because it was not signed under penalty of perjury), *appeal docketed*, No. 22-5204 (D.C. Cir. July 27, 2022); *Trawich v. Hantman*, 151 F. Supp. 2d 54, 59 (D.D.C. 2001) (holding that references to unverified complaint and an "unsigned 'affidavit'" could not controvert summary judgment movant's statement of material facts). Although BOP noted this defect in its Reply, *see* Def. Reply at 7–8, Blackmon has taken no steps to correct her declaration or to provide other competent evidence to substantiate her assertions regarding Castillo.

In any event, even if Blackmon had provided competent evidence of Castillo's remarks, the Court is unaware of any precedent holding that a retaliatory threat provides carte blanche to disregard administrative exhaustion requirements, and Blackmon identifies no such authority; to the contrary, there appears to be a consensus that a retaliatory threat does not affect the exhaustion analysis. *See, e.g.*, *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) (Posner, J.); *Kirk v. Hitchcock Clinic*, 261 F.3d 75, 78 (1st Cir. 2001); *Carter v. West Pub. Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000); *Pietri v. N.Y. Off. of Ct. Admin.*, 936 F. Supp. 2d 120, 136 n.14 (E.D.N.Y. 2013); *MacQueen v. Napolitano*, 803 F. Supp. 2d 1002, 1003–06 (D. Minn. 2011). The appropriate course of action for an employee threatened with retaliation for reporting an incident of discrimination is to report *both* the threat *and* the discriminatory incident, not to report neither.

is entitled to summary judgment as to Plaintiff's non-selection for that position because it was not timely raised in the administrative process.  *See* 29 C.F.R. § 1614.105(a)(1).

The other five lateral non-selections, which went unmentioned in Blackmon's original EEO complaint, also were not exhausted.  *See Bailey v. Verizon Comm'cns, Inc.*, 544 F. Supp. 2d 33, 37 (D.D.C. 2008) ("If a plaintiff's EEOC charge makes a class of allegation altogether different from that which she later alleges when seeking relief in federal district court, she will have failed to exhaust administrative remedies." (citing *Hunt v. D.C. Dep't of Corrs.,* 41 F. Supp. 2d 31, 36 (D.D.C. 1999))).

To avoid this conclusion, Blackmon contends that she amended her complaint to include those five lateral non-selections by "provid[ing] the Agency with a list of positions for which she applied but was not selected for" on April 12, 2011.  *See* Pl. Opp'n at 19.  But the agency's subsequent January 12, 2012, letter put Blackmon on notice that the agency did not understand her April 12, 2011, submission as an amendment:  the positions enumerated in the letter were not included on the list of issues accepted or rejected for investigation.  *Cf. Dudley v. WMATA*, 924 F. Supp. 2d 141, 182 (D.D.C. 2013) ("[Plaintiff] claims he continued to send the EEOC documents [after the initial EEO complaint], and sought to amend his charge. . . .  [But] simply sending the EEOC unsolicited documents about later, unrelated events does not circumvent Title VII's detailed administrative exhaustion requirements.").  Nor did Blackmon's February 1, 2012, amendment to her EEO complaint mention the lateral non-selections at issue here.  *See* Waugh Decl., Ex. F.  The next year, the ALJ's 2013 A&O instructed Blackmon that if she objected to the agency's dismissal of any claim, she should raise that in a timely fashion.  *See id.*, Ex. I at 2.  Once again, Blackmon made no mention of the five lateral non-selections — until some four years later, in a motion that the ALJ understandably denied as untimely.  *See* Waugh Decl., ¶¶

14, 16–17.  In short, the record reflects that Blackmon knew or should have known that she had not successfully amended her EEO complaint to include the five lateral non-selections at issue here; that she had the opportunity to amend her EEO complaint to include those claims or to object to the agency's failure to accept her amendment; and that she nevertheless failed to do anything to preserve the claims in question.

Blackmon appears to argue that if she did not amend her EEO complaint to include all her lateral non-selection claims, it was due to BOP's unlawful processing of her complaint.  *See* Pl. Mem. Opp'n, at 19–21.  Blackmon asserts that BOP never clarified "which of her non-selection claims were subsumed [within the class action noted in footnote 4, *supra*] and which should be included as timely amendments to her EEO complaint."  *See id.*, at 20.  But Blackmon fails to identify any authority that obligated BOP to assist her with bringing her claims.  Notably, she never asserts that BOP prevented her from properly amending her complaint or that the agency affirmatively misled her in any way.  *Cf. Bowden*, 106 F.3d at 438 ("An agency's failure to give notice [of a time limit] does not excuse the untimeliness of a complaint, unless the absence of notice misled the complainant about the time limit's operation.").  Moreover, even if Blackmon was unsure about whether some of her claims were subsumed in the class action, she certainly could have included all her claims in her EEO complaint to ensure the preservation of her rights.  Under such circumstances, Blackmon misplaces the blame for her own failure to exhaust the lateral non-selection claims.

Because Blackmon either failed to raise her lateral non-selections in the EEO process, or did so in an untimely manner,[6] she has failed to exhaust those claims.  BOP is therefore entitled to summary judgment with respect to Blackmon's allegations regarding lateral transfers.

---

[6]     The Court notes that for at least two of the five lateral non-selections mentioned in the Complaint but not in her EEO complaint, Blackmon apparently received notice of her non-selection prior to October 29, 2010 — i.e.,

## II.     Failure to State a Claim

BOP moves to dismiss Blackmon's remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  *See* Def. Mem. at 14–26.  For the reasons that follow, the Court will grant the motion to dismiss.

### A.  Retaliation Claim (Count I)

Blackmon first alleges that BOP retaliated against her "as a result of her prior EEO activity."  *See* Compl., ¶ 96.  Although Blackmon purports to bring this claim under Title VII, it appears that she should have brought it under the ADEA.[7]  "To state a claim for retaliation under the ADEA, a plaintiff must allege that '(1) [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by his employer; and (3) a causal link connects the two.'"  *See Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 283 (D.D.C. 2017) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)).  Blackmon clearly engaged in statutorily protected activity by seeking out EEO counseling in 2007, 2009, and December 2010, *see* Compl., ¶¶ 18, 30, and by filing her formal EEO complaint in late March 2011, *see id.*, ¶ 78.  Indeed, BOP does not contend otherwise.  *See* Def. Mem. at 18–21 (focusing solely on the

---

more than 45 days before contacting an EEO counselor.  *See* Waugh Decl., Ex. C. Specifically, Blackmon received notice of her non-selection for the positions of Regional Reentry Affairs Coordinator on September 21, 2010, *see id.* at 2, and Correctional Program Specialist (Special Agent) on August 25, 2010, *see id.*; *see also* Compl., ¶¶ 43–44. Thus, those two claims would be time-barred even if they had been included in the original EEO complaint.

[7]     Count I of Blackmon's complaint cites only Title VII, and not the ADEA.  But her contacts with an EEO counselor and her complaint to the EEOC concerned claims of age discrimination under the ADEA; and it is questionable whether a plaintiff can bring a retaliation claim under Title VII based on activity protected under the ADEA.  *See* 42 U.S.C. § 2000e-3(a) (forbidding retaliation against an employee under Title VII "because he has opposed any practice made an unlawful employment practice by *this* subchapter, or because he has made a charge . . . under *this* subchapter."  (emphasis added)); *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91–92 (D.D.C. 2006) ("[T]he plaintiff must be opposing an employment practice made unlawful by the statute under which she has filed her claim of retaliation." (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006))). Nevertheless, the ADEA contains its own anti-retaliation protections, *see Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008); "the test for determining retaliation under the ADEA and Title VII is identical," *see Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999); and BOP does not argue that Blackmon's complaint should be dismissed on this ground.  Therefore, for present purposes, the Court will construe Count I of the Complaint as raising an ADEA retaliation claim, as opposed to a Title VII retaliation claim.

14

second and third elements).  BOP argues instead that Blackmon has not alleged a "materially adverse action," nor facts sufficient to infer "a causal link" between the acts complained of and her protected conduct.  *See id.*

A "materially adverse" action is one that could "dissuade a reasonable worker from making or supporting a charge of discrimination."  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  "To establish a causal connection between the protected activity and the termination — in the absence of direct evidence — a plaintiff may show 'that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.'"  *See Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).

Before applying these standards to Blackmon's allegations, the Court pauses to reiterate which allegations are still on the table.  Because Blackmon did not timely exhaust any claims regarding discrete discriminatory events that occurred prior to October 29, 2010, and never exhausted the five lateral non-selection claims in paragraphs 43 through 47 of her Complaint, *see* Part I, *supra*, the Court limits its analysis to events that occurred after that date, and that do not include the previously discussed non-selections.  What remains are seven alleged discriminatory events, none of which can support a retaliation claim.

1. *November 2010 "Satisfactory" Rating*

Blackmon alleges that in November 2010 she received a "satisfactory" rating, which her supervisor subsequently increased to an "exceeds" rating, but not the "outstanding" rating to which Blackmon "believed she was entitled."  *See* Compl., ¶ 34.  According to the Complaint, this occurred approximately sixteen months after the then-most recent alleged protected activity: Blackmon's July 2009 outreach to an EEO counselor.  *See* Compl., ¶ 30.

There is no "bright-line" rule beyond which "a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation," but courts in this circuit look skeptically at any delay beyond three months. *See Keys*, 37 F. Supp. 3d at 373; *see also Harris v. Trs. of Univ. of Dist. of Columbia*, 567 F. Supp. 3d 131, 149 (D.D.C. 2021) ("Although there is no 'bright-line' rule, courts have repeatedly referenced a three-month interval as pushing the limits of temporal proximity."). Although "at the motion to dismiss stage, the hurdle of alleging a causal link is not a high one," *see Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 79 (D.D.C. 2019), the sixteen-month gap here renders any alleged retaliatory motive too speculative to survive a motion to dismiss.

2. *Unfavorable Office Assignment*

Next, Blackmon alleges that "[i]n or around early 2011," she was denied "the office that [she] had requested." *See* Compl., ¶ 57. Instead, she alleges that BOP gave this office to a younger, less experienced employee, and that "[i]n or around the summer of 2011," BOP also gave an intern "an office over Plaintiff." *See id.* Even assuming causality, however, not being assigned the workspace of one's choice is clearly among "those petty slights or minor annoyances that often take place at work and that all employees experience," i.e., an indignity with which antidiscrimination law is not concerned. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *see also Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010) (holding that interim assessment was not a materially adverse action because it "did not affect Porter's 'position, grade level, salary, or promotion opportunities.'" (quoting *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009))).

3. *January 25, 2011, Case Reassignment*

"[O]n or about January 25, 2011," Blackmon alleges that she was reassigned a case from an employee who had 20 cases, compared to Blackmon's caseload of 28.  *See* Compl., ¶ 75.  The reassignment came six weeks after Blackmon's December 13, 2010, contact with an EEO counselor.  This allegation comes the closest to stating a retaliation claim, because the incident occurred less than three months after an EEO contact, and disparate workloads can constitute materially adverse actions.  *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) ("A reasonable employee might well be dissuaded from filing an EEO complaint if she thought her employer would retaliate by burying her in work.").

As an initial matter, the disparity in caseloads is not extreme:  The Court is not confronted with a scenario in which Blackmon's supervisor "increased her workload to five to six times that of other employees," as in the *Mogenhan* case.  *See id.*  Rather, the shifting of one case to Blackmon from another employee with a lighter workload resulted in an approximate 4% increase in Blackmon's workload, which was then 52% higher than that of the other employee.  Thus, the Court concludes that this one reassignment, in itself, did not constitute a materially adverse action.

Moreover, the case numbers cannot be viewed in a vacuum.  The other employee was much less experienced than Blackmon.  *See* Compl., ¶ 57 (alleging that this employee had "only about two years at the Agency at the time compared to [Blackmon's] twenty years.").  At the motion to dismiss stage, a court must consider whether there is "an obvious alternative explanation" for a series of events than what the complaint postulates.  *See Twombly*, 550 U.S. at 567.  It does not seem at all unreasonable that an employee with 20 years of experience would be given a higher caseload than an employee with only two years of experience.  *See also* Compl., ¶

17

76 (alleging that Blackmon disposed of approximately three times as many cases as this particular colleague did).  Given the six-week alleged gap between Blackmon's protected activity and this reassignment of a single case, along with the "natural explanation" for the reassignment based on Blackmon's experience, *see Twombly*, 550 U.S. at 568, the alleged retaliatory motive for the reassignment is too implausible to proceed to discovery.

### 4. *March 2011 Email*

Blackmon alleges that "[i]n or around March 2011 . . . a vacancy arose that Plaintiff could fill." *See Compl.*, ¶ 62.  Blackmon emailed her supervisor about the new position.  Her supervisor responded by encouraging her "to apply for any position you feel you are interested in and qualified for," but allegedly did so "in an upset tone." *See id.*  Once again assuming causality,[8] the Court concludes that no reasonable employee would be dissuaded from engaging in protected activity by the "tone" of an allegedly passive-aggressive email — perhaps the quintessential "petty slight" of the modern office. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  The bottom line is that the supervisor appropriately told her to apply for any position that she was interested in and qualified for.

### 5. *March 2011 Questioning*

Next, Blackmon alleges that "[i]n or around the first week of March 2011," she was absent from the office while "representing the DOJ at a hearing." *See* Compl., ¶ 67.  Because of her absence, her supervisor "assured [Blackmon] that the acting supervisor . . . would handle any requests during that time." *See id.*  Nevertheless, when Blackmon returned to find that two

---

[8]   It is not clear if this exchange occurred before or after Blackmon filed her official EEO complaint. *Compare* Compl., ¶ 62, *with* Compl., ¶ 78.  If before the EEO complaint, the three- to four-month gap between this exchange and her December 2010 EEO counseling would be too attenuated to infer causation. *See Harris*, 567 F. Supp. 3d at 149.  If this exchange occurred immediately after Blackmon filed her EEO complaint, there might plausibly be retaliatory animus, but Blackmon would still fail to state a claim because an email with an "upset tone" does not constitute a "materially adverse action." *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

requests "were unattended to while [Blackmon] was at the hearing," her supervisor "questioned and attempted to hold Plaintiff accountable for" these matters." *See id.*

Although Blackmon may have felt that this interaction was unfair, she fails to identify any material consequences that flowed from it. *See Porter*, 606 F.3d at 818 (holding that verbal criticism without subsequent consequences for plaintiff's job did not constitute a materially adverse action). Moreover, this exchange occurred roughly three months after Blackmon's December 13, 2010, EEO counseling, which tends to negate any inference of retaliatory causation. *See Harris*, 567 F. Supp. 3d at 149. Under the circumstances, this conversation cannot support a retaliation claim.

6. *March 2011 Leadership Training*

Blackmon alleges that "on or about March 25, 2011," she "was also denied the opportunity to attend the LEAP training. Plaintiff sent an email to [her supervisor] . . . inquiring about attending and [her supervisor], despite reading Plaintiff's message, never responded to Plaintiff's request." *See* Compl., ¶ 83. "Denial of training opportunities is materially adverse only if there is a 'material change in . . . employment conditions, status, or benefits.'" *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 204 (D.D.C. 2011) (alteration in original) (quoting *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.D.C. 2010)); *see also Sims v. Dist. of Columbia*, 33 F. Supp. 3d 1, 12 (D.D.C. 2014) (holding that denial of training opportunities and related placement on a performance improvement plan together constituted a materially adverse action). Here, Blackmon fails to identify any tangible professional consequences resulting from her inability to attend the LEAP training. Moreover, this exchange occurred over three months after Blackmon's December 2010 EEO counseling, which once again weighs against any inference of

retaliatory causation.  *See Harris*, 567 F. Supp. 3d at 149.  Therefore, Blackmon's supervisor's

refusal to allow her to attend the LEAP training cannot support a retaliation claim.

   7.  *LMR Quarterly Meetings*

      After filing her EEO complaint in March 2011, Blackmon amended her complaint to

allege that in May 2011, her supervisors prevented her from participating in LMR quarterly

meetings, even though she had served as the recorder for those meetings for the prior three years.

*See* Compl., ¶¶ 85–86; Waugh Decl. Ex. F, at 4.  Exclusion from meetings can support a

retaliation claim when that exclusion causes some independent harm.  *See, e.g.*, *Allen*, 774 F.

Supp. 2d at 199 (holding that plaintiff alleged materially adverse action where exclusion from

meetings "deprived [plaintiff] of information critical to her duties and thus . . . interfered with

her job performance.").  But a plaintiff who fails to "demonstrate[] how her alleged exclusion . . .

had any adverse impact on her employment terms or conditions or caused any objectively

tangible harm" cannot succeed on a retaliation claim.  *See Hayslett v. Perry*, 332 F. Supp. 2d 93,

105 (D.D.C. 2004); *see also Coakley-Simelton v. Georgetown Univ.*, 2020 WL 4569423, *14

(D.D.C. Aug. 7, 2020) (rejecting retaliation claim based on alleged exclusions from meetings

where plaintiff did "not explain why missing these meetings caused her harm").  Here, Blackmon

does not allege that her inability to attend the LMR meetings negatively impacted her job or

caused her any kind of objective harm, tangible or otherwise.  Accordingly, Blackmon's

meeting-exclusion allegations cannot support a retaliation claim.

*   *   *

      Because none of the properly exhausted allegations can support a claim for retaliation

under the ADEA, the Court will dismiss Count I of the Complaint.

B. <u>Disparate-Treatment Claim</u>

Next, Blackmon contends that BOP discriminated against her on the basis of her age, in violation of the ADEA.  *See* 29 U.S.C. § 633a(a) ("All personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age.").  To make out a claim under this section, Blackmon must establish "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age."  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  BOP focuses only on the first prong, arguing that Blackmon's timely exhausted allegations do not include any adverse employment actions because she has not "allege[d] facts demonstrating that she suffered 'objectively tangible harm.'"  *See* Def. Mem. at 16 (quoting *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009)); *see also Drielak*, 890 F.3d at 300 (affirming grant of summary judgment to employer because plaintiff proceeding under § 633a did not provide evidence of "'objectively tangible harm' . . . of the sort that would render [the employer's conduct] adverse employment actions." (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999), *overruled by Chambers v. Dist. of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc))).[9]

To demonstrate that she suffered adverse employment actions, Blackmon may rely only on the seven properly exhausted allegations that the Court has already held cannot support a

---

[9]     The D.C. Circuit recently jettisoned the "objectively tangible harm" standard for Title VII cases in *Chambers*, calling it an "atextual requirement . . . [that] frustrates Title VII's purpose of ending discrimination in the workplace."  *See* 35 F.4th at 878.  Although the ADEA and Title VII previously had identical adverse-action requirements, *see Baloch*, 550 F.3d at 1196 (D.C. Cir. 2008); *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006), controlling precedent in this jurisdiction still requires plaintiffs bringing suit under the ADEA to show an "objectively tangible harm."  *See Drielak*, 890 F.3d at 300.  While it arguably may be appropriate to extend the holding of *Chambers* to the ADEA context, it is not for this Court to make that determination in the first instance.  *See Bloem v. Unknown Dep't of the Interior Emps.*, 920 F. Supp. 2d 154, 161 (D.D.C. 2013) ("'The doctrine of *stare decisis* compels district courts to adhere to a decision of the Court of Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the United States sees fit to overrule the decision.'" (quoting *Owens-Ill., Inc. v. Aetna Cas. & Sur. Co.*, 597 F. Supp. 1515, 1520 (D.D.C. 1984))).  Therefore, unless and until the D.C. Circuit harmonizes its ADEA and Title VII precedent on this point, this Court must continue to apply the "objectively tangible harm" requirement to ADEA disparate-treatment cases.

retaliation claim.  *See* Part II.A, *supra*.  To be sure, the standard governing "adverse employment actions" in the disparate-treatment context is not identical to the definition of "materially adverse actions" applied to retaliation claims.  *See Mogenhan*, 613 F.3d at 1165–66 (holding that district court erred by conflating the two standards).  But the retaliation standard already applied by the Court is the less rigorous of the two.  *See Baloch*, 550 F.3d at 1198 n.4 ("'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim."); *Lawrence v. Lew*, 156 F. Supp. 3d 149, 161–62 (D.D.C. 2016) ("As our Court of Appeals has explained, the threshold for adverse employment action in the retaliation context is slightly lower.").  Thus, the Court concludes that the seven alleged events that did not clear the bar to support Blackmon's retaliation claim also fail to meet the "adverse employment action" standard for her disparate-treatment claim:  None of the events was serious enough to cause Blackmon objectively tangible harm, just as they were not enough to dissuade a reasonable employee from engaging in the EEO process.[10]

C.  Hostile Work Environment (Counts II and IV)

Finally, Blackmon alleges that BOP subjected her to a hostile work environment on the basis of her age, *see* Compl., ¶¶ 117–125 (Count IV); and in retaliation for her protected activity, *see* Compl., ¶¶ 100–08 (Count II); *see also Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environment can amount to retaliation." (citing *Singletary v. Dist. of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003)).  Under either theory, "[t]o prevail on such a claim, a plaintiff must show that [her] employer subjected [her] to 'discriminatory

---

[10]      As for the claim that Blackmon's supervisor rated her "satisfactory" and later increased that rating to "exceeds," but not to "outstanding," *see* Compl., ¶ 34 — which fails to state a retaliation claim because it occurred over a year after the then-most recent protected activity, defeating any causal inference, *see supra* — "a . . . thick body of precedent . . . refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions" unless they affect the plaintiff's grade or salary.  *See Brown*, 199 F.3d at 458.  As Blackmon has not alleged that her "exceeds" rating had any tangible negative economic impact on her, this claim also fails.

intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *See Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  This is a totality-of-the-circumstances inquiry; incidents that, standing alone, would not rise to the level of actionable discrimination may together constitute a hostile work environment.  *See Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("In discerning severity and pervasiveness, we assess the timeline of events as a whole." (citing *Baloch*, 550 F.3d at 1201)).  Moreover, claims that may not have been timely exhausted as discrete discriminatory events can nevertheless support a hostile work environment theory if the EEO complaint alleging a hostile work environment includes related events that occurred within the limitations period.  *See Morgan*, 536 U.S. at 117. The key inquiry in this regard is whether "[t]he constituent acts [are] 'adequately linked' such that they form 'a coherent hostile environment claim.'"  *See Baird v. Gotbaum*, 792 F.3d 166, 169–70 (D.C. Cir. 2015) (*Baird II*) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (*Baird I*)).

    Blackmon's hostile work environment claim is based on the following allegations:

> being threatened by Mr. Castillo . . . being made responsible for various
> extremely demanding duties beginning in or around January 2008; not
> being given sufficient time to complete tasks while others . . . were and
> then being chastised; being consistently denied the opportunity to serve as
> acting supervisor despite Plaintiff's seniority and experience . . . having to
> work in [a] small, shared area while younger and less senior
> employees/interns received offices; being held responsible for missed
> [tasks] when she was otherwise relieved of this duty when on leave or
> traveling for the [BOP] . . . being unnecessarily tasked with submitting
> daily reports . . . receiving unfavorable performance evaluations . . . being
> singled-out as not being allowed to receive a Blackberry . . . not being
> allowed to compete or apply for a GS-15 position . . . and being prevented
> from communicating with essential offices [outside her own].

*See* Pl. Mem. Opp'n, at 34–35.  Taking those allegations as true, construing them in the light most favorable to Blackmon, and assuming for the sake of argument that the events are all sufficiently connected, Blackmon still has not met the standard for pleading a hostile work environment.  Simply put, none of the allegations "add[s] materially to the alleged aura of hostility," under either a retaliation theory or as an age-discrimination claim.  *See Brooks*, 748 F.3d at 1276.

Indignities such as receiving a rating of "fully satisfactory" or "exceeds" rather than "outstanding," or not receiving one's preferred office space or a Blackberry, fall far short of demonstrating that Blackmon was subjected to discrimination that was severe and pervasive, which materially affected her work situation.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (to support finding of hostile work environment, adverse employment actions must be "extreme [enough] to amount to a change in the terms and conditions of employment"); *see also Aldrich v. Burwell*, 197 F. Supp. 3d 124, 137 (D.D.C. 2016) (holding that allegations including not receiving the plaintiff's preferred workspace did not amount to a hostile work environment).  Blackmon's other allegations of workload imbalance, micromanaging, not receiving supervisory responsibilities, and unjustified criticism similarly comprise "a series of 'petty insults, vindictive behavior, and angry recriminations' that are not actionable," whether viewed in isolation or together.  *See Brooks*, 748 F.3d at 1277–78 (quoting *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 74 (1st Cir. 2011)).[11]

---

[11]     One allegation comes closest to meeting the "severe or pervasive" standard:  Juan Castillo's alleged retaliatory threats.  Blackmon alleges that "Mr. Castillo warned Ms. Blackmon that she would ruin her and her husband's career[s] if she pursued an EEO complaint against BOP."  *See* Compl., ¶ 19.  That evidence might support a finding that the employer "subjected [the employee] to an abusive work environment *because* she had complained of discriminatory treatment."  *See Román v. Castro*, 149 F. Supp. 3d 157, 169 (D.D.C. 2016) (emphasis in original).  But the alleged threat itself, even viewed in the context of the rest of the Complaint, is insufficient to establish "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *See Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

Accordingly, Blackmon has not sufficiently pleaded a hostile work environment claim, and the Court will dismiss Counts II and IV.

## CONCLUSION

The Court has carefully reviewed Blackmon's Complaint, which, to be sure, describes an unpleasant work environment.  But the federal statutes forbidding employment discrimination and retaliation do not enact "a general civility code for the American workplace."  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  Because Blackmon's claims either have not been properly exhausted or fail to state a claim, the Court is constrained to grant BOP's motion for partial summary judgment and to dismiss for failure to state a claim.  A separate order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:   September 12, 2022